*In re* MARRIAGE OF KARA L. SLAYTON, f/k/a Kara L. Strappe, Plaintiff-Appellee, and THOMAS J. STRAPPE, Defendant-Appellant (*In re* Paternity of Brandon James Strappe, a Minor).

Third District   No. 3—95—0147

Opinion filed January 12, 1996.—Rehearing denied February 15, 1996.

Cusack & Fleming, P.C., of Peoria (Michael A. Fleming, of counsel), for appellant.

Kim L. Kelley, of Peoria, for appellee.

Marcia F. Straub, of Peoria, guardian *ad litem*.

JUSTICE BRESLIN delivered the opinion of the court:
This appeal raises issues concerning the paternity and custody of a minor child where a presumed father and a man alleging to be the biological father compete for the right and responsibility to raise the child. The specific questions presented are: (1) whether a trial court must conduct an initial hearing to determine whether a paternity action is in a child's best interests; and (2) whether a man who is presumed to be the father at the time paternity proceedings are commenced may seek custody of the child after the presumption of fatherhood has been rebutted and another man has been found to be the child's biological father. The circuit court answered both questions in the negative. For the reasons that follow, we reverse as to the second question and remand for further proceedings.

## FACTS

The plaintiff, Kara Slayton, f/k/a Kara Strappe, and the defendant, Thomas Strappe, were married in 1986. One child, Brandon, was born during the marriage, in May 1989. As there was no indication to the contrary, Thomas assumed he was Brandon's natural father and treated Brandon as his son throughout the marriage.

In February 1991, Kara brought an action to dissolve the marriage, alleging in her petition that no children were born of the marriage. This was apparently the first time Thomas was made aware that someone else might be Brandon's biological father. Thomas nonetheless denied that no children were born of the marriage and requested sole custody of Brandon in the event dissolution was granted. The court entered an order dissolving the marriage, but generally reserving the substantive issues until a later date. Temporary custody of Brandon was placed with Kara subject to Thomas' rights of visitation.

Meanwhile, Jeffrey Slayton filed a paternity action alleging that he was Brandon's biological father. The court took no action on this suit until April 1992, when it consolidated the suit with the dissolution proceeding between Kara and Thomas. Soon thereafter, Kara and Jeffrey married.

In October 1992, the court, upon its own motion, appointed a guardian *ad litem* to represent Brandon's interests. The guardian

filed another paternity petition, alleging in alternative counts that either Thomas or Jeffrey was Brandon's natural father. The guardian also moved for blood tests to facilitate the paternity determination. The court ordered blood tests, over Thomas' objection, in January 1993. The results, filed with the court in June 1993, showed that Thomas could not be Brandon's biological father and that Jeffrey was, to a 99.8% probability, the father. Three months later, the marriage between Jeffrey and Kara ended in dissolution, and Jeffrey was granted visitation rights with Brandon.

Based upon the blood tests, Kara moved for summary judgment on the issue of Brandon's paternity in September 1993. Thomas, in turn, argued that the court should first determine whether a paternity proceeding was in Brandon's best interests before considering the results of the blood tests. Toward this end, Thomas moved for a psychological evaluation of the parties, arguing that such an evaluation would aid the court in its determination of Brandon's best interests.

The court granted Thomas' motion for psychological testing, but considered Kara's motion for summary judgment in April 1994, before the results were filed with the court. The court rejected Thomas' argument that a hearing to determine the child's best interests must precede a paternity determination. Thus, based solely upon the blood tests, the court entered summary judgment on the issue of Brandon's paternity in Jeffrey's favor.

In May 1994, Kara and Jeffrey filed a stipulated request that the trial court place permanent custody of Brandon with Kara. Kara also filed a motion to remove Brandon to Wisconsin, where Jeffrey had since relocated. Kara's petition alleged that Kara and Jeffrey contemplated a reconciliation and possible remarriage.

Prior to the court's consideration of these motions, the results of the psychological tests were filed with the court. The psychologist determined that Brandon was aware that Jeffrey was his "real dad," and that healthy bonding had occurred between the two, so that the potential existed for a "healthy family identity and relationship" among Kara, Jeffrey and Brandon. The psychologist also found, however, that Brandon had bonded with Thomas and that Brandon should have contact with Thomas for some period of time. Therefore, the psychologist recommended that Thomas have visitation with Brandon on a "3 to 4 week cyclic basis" for a six-month period, to be reviewed thereafter.

The trial court considered the custody stipulation, Kara's petition to remove Brandon from Illinois, and the psychologist's report in August 1994. Based upon its earlier determination that Thomas was

not Brandon's biological father, the court ruled that Thomas had no standing to contest either the custody stipulation or the removal petition. Since the guardian *ad litem* raised no objections, the court approved both the stipulation and the removal petition. Kara and Brandon subsequently moved to Wisconsin, but it is unclear from the record whether Kara and Jeffrey remarried or whether they are currently living together.

The court also found that continued visitation with Thomas would be in Brandon's best interests. Thus, the court ordered visitation on various weekends from September 1994 through January 1995, to be reviewed in February 1995. It appears, however, that no such review was made at that time and that Thomas has not been afforded visitation with Brandon since the end of January 1995.

## ANALYSIS

■ The first issue Thomas raises on appeal is whether a trial court must determine, after an evidentiary hearing, whether a paternity action is in the child's best interests prior to allowing the action to go forward. This is a question of first impression in Illinois and one which we decline to answer under the facts of this case.

In Illinois, proceedings to determine paternity are governed by the Illinois Parentage Act of 1984 (Act) (750 ILCS 45/1 *et seq.* (West 1992)), which is a variation of the Uniform Parentage Act (UPA) (9B U.L.A. 287 *et seq.* (West Master Edition 1987)). The Act contains no express requirement that a trial court consider a child's best interests before allowing a paternity action to proceed. Courts in other UPA jurisdictions, however, have held that the paternity statute's purposes, if not its language, mandate that a best interest hearing be held. (See *McDaniels v. Carlson* (1987), 108 Wash. 2d 299, 738 P.2d 254; *In re Marriage of Ross* (1989), 245 Kan. 591, 783 P.2d 331; *M.F. v. N.H.* (1991), 252 N.J. Super. 420, 599 A.2d 1297.) These courts instructed the trial courts to make a best interests determination on a case-by-case basis, considering a number of factors. The New Jersey court in *M.F.* listed eight such factors:

"(1) Harm to the child such as emotional injury, distrust, and possible confusion of knowing the parenting father is not the biological father;

(2) Protection of the child's physical, mental, and emotional needs;

(3) The stability of the family relationships and extent of the intrusion that will result from a paternity determination;

(4) The consistency of the putative father's interest in the child;

(5) Societal stigma that may result or be perceived by establishing relationship, including placing the child's birth outside the traditional wedlock setting;

(6) Continuity of established relationships;

(7) Any extent to which uncertainty of parentage already exists in the child's mind; [and]

(8) The child's interest in knowing family and genetic background, including medical and emotional history." *M.F.*, 252 N.J. Super. at 429-30, 599 A.2d at 1302.

Although a best interests hearing prior to a paternity determination may have appeal, it is obvious from these factors that a hearing would have little value after the determination has been made and the child has developed a healthy relationship with his biological father, especially in cases where the marital relationship between the mother and the presumed father has ended. Such is the state of affairs in the present case. Thus, it would be useless, if not harmful, to remand these proceedings for a determination of whether a paternity action is in Brandon's best interests. We accordingly affirm the trial court's paternity determination and leave to a more appropriate case the question of whether a best interest hearing must be held prior to allowing a paternity action to proceed.

The next question we address is whether Thomas retained standing to seek custody of Brandon after the trial court found that Thomas was not Brandon's father.

■ Under section 601 of the Illinois Marriage and Dissolution of Marriage Act, custody of a child may be sought by either of his or her parents or by a nonparent if the child is not in the physical custody of one of the parents. (750 ILCS 5/601 (West 1992).) The question here is whether Thomas may be considered a "parent" for the purposes of section 601.

■ In *In re Marriage of Roberts* (1995), 271 Ill. App. 3d 972, 649 N.E.2d 1344, the fourth district considered the question of whether a man whose presumption of paternity has been rebutted may seek custody as a parent under section 601. Relying upon the general rule that standing to seek relief is based upon the status of the party at the time relief is sought, the court held that, where the presumption of paternity had not been rebutted as of the time the man first sought custody, he is to be considered a "parent" for section 601's purposes. *Roberts*, 271 Ill. App. 3d at 982, 649 N.E.2d at 1351.

We find that the rule adopted by the *Roberts* court is a sensible one, and we will accordingly apply it to the facts of this case. Here Thomas first sought custody of Brandon in February 1991, well before the blood tests proved that he was not Brandon's biological father. Since Thomas was Brandon's presumed father as of that time (see 750 ILCS 45/5 (West 1992)), we hold that Thomas retained standing to seek custody of Brandon even after the trial court adjudicated Jef-

frey Slayton to be Brandon's father. Therefore, the trial court's order granting Kara custody of Brandon must be reversed and the cause remanded to allow both Kara and Thomas to seek custody of Brandon under section 601 of the Illinois Marriage and Dissolution of Marriage Act.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.

HOLDRIDGE, P.J., and LYTTON, J., concur.