(Nos. 97227, 97327 cons.

*In re* THE PARENTAGE OF JOHN M., a Minor (Javier Valdivia v. Maria Matias Izaguirre *et al.* (Maria Matias Izaguirre, Appellant; Dennis Dean Malkowski, Appellee; Lisa Madigan, Attorney General of the State of Illinois, Appellant)).

*Opinion filed September 23, 2004.*

Bernard S. Shapiro and Kathryn McGowan Bettcher, of Batavia, for appellant Maria Matias Izaguirre.

Gary Feinerman, Solicitor General, and Diane M. Potts, Assistant Attorney General, of Chicago, for appellant Lisa Madigan, Attorney General, of Springfield.

Steven N. Peskind, of Geneva, appellee.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

Intervenor, Lisa Madigan, in her capacity as Attorney General of the State of Illinois, and defendant Maria Izaguirre[1] (Maria) appeal directly to this court from an order of the Kane County circuit court holding the Illinois Parentage Act of 1984 (the Act) (750 ILCS 45/1 *et seq.* (West 2000)) unconstitutional and dismissing with prejudice the "Petition to Determine a Father-Child Relationship" brought by plaintiff, Javier Valdivia

---

[1]Maria is married to Dennis Malkowski and identifies herself in her brief as Maria Malkowski, not Maria Izaguirre.

(Javier), pursuant to section 7 of the Act (750 ILCS 45/7 (West 2000)). The circuit court entered its ruling upon a motion brought by defendant Dennis Dean Malkowski (Dennis).

We reverse the circuit court's judgment and remand for further proceedings.

## BACKGROUND

On May 22, 2002, Javier filed a petition in the circuit court of Kane County, pursuant to section 7 of the Illinois Parentage Act, asking the court to determine the existence of a father-child relationship between himself and John M. (Baby John), a child born to Maria on August 31, 2001. Javier alleged in the petition that he is Baby John's biological father, that he has visited Baby John since Baby John's birth, and that he is willing and able to provide financial support for Baby John. Javier asked the court to issue an order establishing his paternity. Javier also asked the court to determine his child support obligation and to set a reasonable visitation schedule.

Dennis was married to Maria at the time of Baby John's birth and, thus, is Baby John's presumed father pursuant to section 5(a)(1) of the Act (750 ILCS 45/ 5(a)(1) (West 2002)). In response to Javier's petition, Dennis asked the court to stay all proceedings, including any genetic testing, pending the appointment of a guardian *ad litem* for Baby John. Dennis then moved for the involuntary dismissal of Javier's petition. In support of the dismissal motion, Dennis presented three arguments. First, Dennis argued that the Illinois Parentage Act, "as applied to this case," is unconstitutional because it allows a "stranger" to attack the legitimacy of a child. Citing to the United States Supreme Court case *Michael H. v. Gerald D.*, 491 U.S. 110, 105 L. Ed. 2d 91, 109 S. Ct. 2333 (1989), Dennis contended that Illinois law, "as utilized by the plaintiff[,] is an attempt by the plaintiff to

intercede into the sacred family unit of a husband, wife and child born during the marriage." Dennis further alleged:

"[T]o the extent that Illinois law creates the possibility that a child can have two fathers, the child is denied due process of law and the equal protection of law guaranteed by the Constitutions of the United States of America and the State of Illinois."

In Dennis' second argument, under the heading "Best Interests," Dennis contended:

"Prior to granting any relief prayed for by the plaintiff, Illinois *should require* that there be a best interests hearing to determine if it is in the best interest that there be any genetic parentage testing at all and whatsoever. The superior rights of marriage, and a child born to a married couple, should be considered prior to letting a stranger conduct a legal and scientific incursion into the lives of a mother, father, and infant child, which will permanently and adversely effect [*sic*] each of them." (Emphasis added.)

Dennis then concluded:

"Basic and fundamental fairness, constitutional guarantees of equal protection of law and due process of law demand that this court hold a hearing to determine the best interest of the minor child as to whether or not a parentage issue should or can be raised by any person other than the natural mother's husband before allowing any further proceedings herein whatsoever."

In his third argument, Dennis challenged Javier's standing to bring the petition to establish a parent-child relationship. Dennis argued that Javier did not have standing because Dennis and Maria were married at the time that Baby John was born and there was evidence (apparently Dennis' attached affidavit) that Dennis was neither sterile nor impotent, and that Dennis and Maria engaged in "conjugal contact" around the time that Baby John was conceived. No authority was cited for this "lack of standing" argument.

Dennis submitted an affidavit in support of his

dismissal motion. In the affidavit[2] Dennis asserted that he and Maria were married on December 19, 1997, that they have not divorced, and that no suit to dissolve the marriage had been filed. In the course of this marriage, Maria gave birth to a son, Baby John, on August 31, 2001. Dennis is named as Baby John's father on Baby John's birth certificate. Dennis further asserted that he is neither impotent nor sterile and that he and Maria engaged in sexual intercourse around the time of Baby John's conception.

Dennis stated that, shortly after Baby John's birth, in October or November of 2001,[3] Javier took Baby John to live with him. Maria and her nine-year-old daughter, Betzaida Izaguirre, also began living with Javier at that time. About four months later, however, Maria and the children returned to Dennis' residence. According to Dennis, when Maria returned, she said that she began living with Javier to protect Baby John; that Javier held her against her will; and that she and the children had been required to live in a basement, where it was damp and cold. Dennis further stated that Maria and the children left the marital residence again on June 17, 2002 (the date of the first court hearing on Javier's petition). When Dennis went to court, he discovered that Maria and the children were with Javier. Maria refused to speak with Dennis. Moreover, when Dennis returned home after the court hearing, he found that Maria's and the children's belongings had been removed from his premises. According to the affidavit, Maria and the children have been living with Javier since that time.

---

[2]Some of the matters asserted in the affidavit were repeated in a "Background" section of the motion for involuntary dismissal.

[3]Although the affidavit and motion were filed on the same day, the motion states that Baby John was taken from the marital residence in October, while the affidavit states that Baby John was taken in November.

Maria, represented by Prairie State Legal Services, Inc., entered an appearance on June 27, 2003. The record contains no pleadings by Maria in response to Javier's petition.[4]

In December 2002, a guardian *ad litem* was appointed for Baby John. Thereafter, on April 8, 2003, the court held a hearing on Dennis' motion to dismiss. The court heard no witness testimony and received no documentary evidence. Javier, Maria, Dennis and Baby John were each represented by counsel, who presented arguments to the circuit court. After hearing these arguments, the court ruled as follows:

"Okay. It seems to me that several factors of this statute are problematic.

First of all, I think there were presumptions or an objective or a consideration in society that marriage in a family has some sanctity and that that is a basis for our statutes, our government and much else of what we do in government and society.

Secondly, although it is present in this case, the absence of any time limit herein which is this time limit could come into place [*sic*] I see as a problem and I agree with Mr. Peskind [defense counsel] and I agree with Ms. Kostelney [guardian *ad litem*] and all of the cases that say that we have to consider the best interest of the child in determining the custody, matter of visitation and any adoption situations of parentage or termination of parentage.

And so I am going to find the statute unconstitutional. It is I think, too, violates some of the basic tenants [*sic*] of our society. I think the presumption of the paternity is of the husband in this case. Certainly, there is no divorce, no

---

[4]Although Maria did not respond to Javier's petition, she responded to a "Counterclaim/Cross-claim for Custody" filed by Dennis. In this petition, Dennis sought temporary and permanent custody of both Baby John and Betzaida. Maria moved to strike the counterclaim/cross-claim as it related to Betzaida, alleging that Dennis did not have standing to seek custody of her. It is unclear whether any action was taken by the court on this counterclaim/cross-claim.

legal separation or no court orders in effect ending that marital relationship.

And I don't think that we can, I don't think the statute is clear enough to rely on it."

The court's written order contains two findings:

"1. That 750 ILCS 45/1 *et seq.* [the Parentage Act] and specifically 750 ILCS 45/7 [section 7] is unconstitutional and violates the constitutional rights of due process and equal protection of law guaranteed and applied to Dennis Malkowski and Baby John as provided for in the Constitution of the United States of America, Fourteenth Amendment and the Illinois Constitution.

2. The Court also finds that the statute is facially unconstitutional in that it fails to allow a court to determine best interests of children in considering petitions brought under 750 ILCS 45/7."

The court dismissed Javier's petition with prejudice.

Having declared the Parentage Act unconstitutional, the court sent notice to the Illinois Attorney General pursuant to Supreme Court Rule 19. On May 30, 2003, Lisa Madigan, as Attorney General of the State of Illinois, filed a petition to intervene, which the court granted, and on September 2, 2003, the Attorney General submitted a memorandum of law in support of the constitutionality of the Act.

Javier filed a motion for reconsideration in which he attacked the circuit court's finding of unconstitutionality. In this motion, Javier argued that the circuit court's reasoning in finding the Parentage Act unconstitutional, *i.e.*, the sanctity of marriage and the societal importance of preserving that unity, failed to take into consideration the facts of this case. Javier pointed out that, although Maria and Dennis were legally married when Baby John was born, they had not been living together as man and wife; that Javier and Maria had an ongoing relationship that began in January 2000; and that Maria and Baby John have been living with Javier since October 2001. Javier argued that, in accordance with the statute, he

was entitled to establish his paternity. Once paternity was established, a best interests hearing could be held, in accordance with section 14 of the Act (see 750 ILCS 45/14 (West 2002)), before determining what rights he should be afforded. Javier also filed with the court a DNA Parentage Test Report showing a 99.99997% probability of his paternity to Baby John.

Maria moved to vacate the circuit court's order finding the Parentage Act unconstitutional and dismissing Javier's petition. Maria, like Javier, argued that the court's finding of unconstitutionality was improperly premised on assumptions derived from the unsubstantiated assertions contained in Dennis' motion and affidavit. Maria contradicted several of Dennis' assertions in her own affidavit, which she attached to her motion.

In her affidavit, Maria asserted that she had obtained a plenary order of protection against Dennis in November 2000 because Dennis had been abusive to her during the marriage. The order of protection granted Maria exclusive possession of one bedroom in the marital home and prohibited Dennis from physically abusing her, harassing her, or interfering with her personal liberty. Maria further alleged that she did not have sexual relations with her husband since before November 2000. Moreover, Maria claimed that, in March 2001, Dennis tried to force her to have an abortion after she told him that she was pregnant and that he was not the father. In addition, Maria asserted that, in September 2001, after Baby John was born, Dennis locked her and her children out of the marital residence and would not allow them to return until sometime in October 2001.

Maria alleged in her affidavit that she and the children resided in the marital home from October 2001 until June 2002, when she left Dennis, taking the children with her, because Dennis was threatening her life and she was concerned for her own safety. Maria

stated that she rented a room in Javier's mother's home and she continues to reside there with her children.

Maria admitted that Dennis is listed as Baby John's father on Baby John's birth certificate but claimed this was because hospital personnel never asked her to identify the child's father before entering the information. Maria further alleged that Dennis has shown little interest in Baby John since his birth, that Dennis has seen Baby John on only two occasions since June 2002, that Dennis did not visit Baby John in the hospital when he was sick, and that Dennis has not assisted in Baby John's care or provided any financial support for her or the children since June 2002.

In contrast, Maria stated that Javier accompanied her on her doctor visits during the pregnancy, visited Baby John frequently in the hospital when he was sick, has seen Baby John daily since June 2002, and has been providing financial support for Baby John since his birth. Maria averred, too, that she had her own insurance, provided by her employer, which covered most of the medical expenses incurred during her pregnancy.

On October 2, 2003, the court held a hearing with regard to the motions filed in opposition to its April 8, 2003, order. Again, no evidence was taken. The court heard arguments of counsel and then entered its ruling. The entirety of its judgment is as follows:

"Having heard all of the arguments and reviewed the considerations that went into my first—my initial ruling in this case, I have reconsidered it and I'm going to deny the requested relief. The original ruling will stand.

I believe today was the first time in this case we've allowed to—or heard anything about any facts; and I think based on the law and public policy on which my decision was originally made, I believe that this statute as written is unconstitutional."

An order denying all postjudgment motions was issued.

Pursuant to Supreme Court Rule 302(a), appeal was brought directly to this court by the Attorney General

and by Maria Izaguirre. 134 Ill. 2d R. 302(a). The two appeals have been consolidated by order of this court.

## ANALYSIS

At issue in the case at bar is the constitutionality of the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2002)), the statutory scheme which governs proceedings to determine paternity. Our Act is derived from the Uniform Parentage Act of 1973, 9B U.L.A. 287 (1987). *In re Marriage of Slayton,* 277 Ill. App. 3d 574 (1996). Its purpose is to further the public policy of Illinois to "recognize[ ] the right of every child to the physical, mental, emotional and monetary support of his or her parents," without regard to the parents' marital status. 750 ILCS 45/1.1, 3 (West 2002).

Under the Act, a father-child relationship may be established by presumption (750 ILCS 45/5(a) (West 2002)), by consent (750 ILCS 45/6 (West 2002)), or by judicial determination (750 ILCS 45/7 (West 2002)). The Act recognizes four situations which will give rise to a presumptive father-child relationship. The one pertinent to the case at bar is found in section 5(a)(1) and provides that a man is presumed to be the natural father of a child if "he and the child's natural mother are or have been married to each other, even though the marriage is or could be declared invalid, and the child is born or conceived during such marriage." 750 ILCS 45/5(a)(1) (West 2002). Although two of the four presumptions found in section 5(a) are "conclusive," the presumption in section 5(a)(1) is rebuttable by clear and convincing evidence. 750 ILCS 45/5(b) (West 2002).

Legal determinations regarding the father-child relationship are governed by section 7 of the Act (750 ILCS 45/7 (West 2002)). A father-child relationship may be *established* pursuant to section 7(a), or *disestablished* pursuant to sections 7(b) and 7(b.5). Section 7(a) permits various parties to bring an action to establish a child's

paternity, without regard to whether parentage is presumed under section 5(a). Section 7(a) provides in pertinent part:

"An action to determine the existence of the father and child relationship, *whether or not such a relationship is already presumed under Section 5 of this Act* [750 ILCS 45/ 5], may be brought by the child; the mother; a pregnant woman; any person or public agency who has custody of, or is providing or has provided financial support to, the child; the Illinois Department of Public Aid if it is providing or has provided financial support to the child or if it is assisting with child support collection services; or a *man presumed or alleging himself to be the father of the child* or expected child." (Emphases added.) 750 ILCS 45/7(a) (West 2002).

Thus a man alleging himself to be the biological father of a child has standing to bring an action to establish his relationship to the child, without regard to whether another man is already presumed to be the child's father pursuant to section 5(a) of the Act. Moreover, once a petition to establish parentage is filed with the court, the court, pursuant to section 11(a) of the Act, "may, *and upon request of a party shall*, order or direct the mother, child and alleged father to submit to deoxyribonucleic acid (DNA) tests to determine inherited characteristics." (Emphasis added.) 750 ILCS 45/11(a) (West 2002). If the results of paternity testing obtained pursuant to this section show that the presumed father is not the biological father, the presumption in section 5 is rebutted. 750 ILCS 45/11(g) (West 2002).

Although the Act contains no express requirement that a court consider the best interests of the child before any testing is conducted or a legal determination of paternity is made (see *In re Marriage of Slayton*, 277 Ill. App. 3d at 577), section 14 of the Act provides that any decisions regarding custody and visitation "shall [be] determine[d] in accordance with the relevant factors set forth in the Illinois Marriage and Dissolution of Mar-

riage Act [750 ILCS 5/101 *et seq.*] and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child." 750 ILCS 45/14 (West 2002). Thus, even though paternity may be established upon the filing of a petition pursuant to section 7(a), any parental rights of the biological father, such as the right to have custody of, or visitation with, the child, shall not be granted unless it is in the child's best interest.

In the case at bar, Javier, relying on the statutory right granted him in section 7(a) of the Act, filed a petition in the circuit court of Kane County, seeking a judicial determination of his paternity to Baby John. Dennis, as Baby John's presumed father, sought to bar Javier from establishing his paternity. Dennis argued that the Act, by permitting a putative father to rebut the presumption of paternity recognized in section 5(a)(1) of the Act, unconstitutionally infringes upon his rights and the rights of the family. This is so, Dennis argued, because the Act makes no provision for a best interests hearing prior to the paternity determination.

Agreeing with Dennis, the circuit court dismissed Javier's petition with prejudice. The court made two specific rulings: (1) that the statute violates due process and equal protection rights *"guaranteed and applied to* Dennis Malkowski and Baby John" and (2) that "the statute is facially unconstitutional in that it fails to allow a court to determine best interests of children in considering petitions brought under 750 ILCS 45/7."

The circuit court's judgment is before us on direct review. Because a statute's constitutional validity is a question of law, we review *de novo* the circuit court's decision declaring the statute unconstitutional. *Arvia v. Madigan*, 209 Ill. 2d 520, 536 (2004); *People v. Einoder*, 209 Ill. 2d 443, 450 (2004). When considering the constitutionality of a statute on review, we begin with the presumption that the statute is constitutional. *People*

*v. Huddleston*, 212 Ill. 2d 107 (2004); *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173 (2003). Further, we have an obligation to construe the statute in a manner which upholds its constitutionality, if such a construction is reasonably possible. *Wickham v. Byrne*, 199 Ill. 2d 309, 316 (2002). The burden of clearly establishing the statute's constitutional infirmity is on the party challenging the validity of a statute. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290 (2003).

Our task of reviewing the circuit court's judgment in the case at bar is hampered by a lack of clarity in the court's ruling. The scope of the ruling is not readily apparent from the text of the order. The court declared the statute unconstitutional, apparently invalidating the Parentage Act in its entirety, rather than some portion thereof. In addition, the circuit court used the terms "as applied" and "facially" when finding the statute unconstitutional, making it unclear whether the court intended to find the Act, either in whole or in part, unconstitutional "as applied" or "on its face" or both. More importantly, however, the court's "findings" that the Act violates due process and equal protection are conclusory and unsupported by any legal analysis or explanation. The circuit court never engaged in any of the traditional analyses associated with due process and equal protection claims.

This court noted in *In re R.C.*, 195 Ill. 2d 291, 302-03 (2001), that there are general procedures that courts follow when addressing due process challenges:

> "The analysis courts use when confronted with a claim that a statute violates the due process guarantees of the United States and Illinois Constitutions depends on the nature of the right upon which the statute supposedly infringes. Ordinarily, courts will employ a relaxed scrutiny of statutes, looking only to see whether the statute bears a rational relationship to a legitimate state interest. [Citation.] However, in cases where the right infringed upon is

among those considered a 'fundamental' constitutional right, courts subject the statute to 'strict' scrutiny. To survive strict scrutiny, the means employed by the legislature must be 'necessary' to a 'compelling' state interest, and the statute must be narrowly tailored thereto, *i.e.*, the legislature must use the least restrictive means consistent with the attainment of its goal."

Similarly, there are analytical procedures which are typically followed when an equal protection challenge is made. In *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456 (2004), we explained:

"Equal protection guarantees that similarly situated individuals will be treated similarly, unless the government demonstrates an appropriate reason to do otherwise. [Citation.] The shorthand we have developed for the degree of deference we give in evaluating the appropriateness of such a reason is the term 'scrutiny.' In cases like the one before us, where the statutory classification at issue does not involve fundamental rights, we employ so-called rational basis scrutiny and ask only whether the challenged classification bears a rational relation to a legitimate purpose."

Although any substantive due process analysis must begin with a careful description of the asserted right (see *Reno v. Flores*, 507 U.S. 292, 302, 123 L. Ed. 2d 1, 16, 113 S. Ct. 1439, 1447 (1993)), the court, in the case at bar, never identified the nature of the right purportedly infringed upon by the statute, nor did the court, with regard to the equal protection challenge, identify which individual or class of individuals was being treated differently than others similarly situated. Efforts by the Attorney General and Maria, in their postdismissal motions and memorandums of law, to inject traditional constitutional due process and equal protection analysis into the proceedings were summarily rejected by the circuit court. As a consequence, our task, initially, is to define the parameters of the circuit court's holdings.

### A. *Whether the Parentage Act Violates Due Process and Equal Protection Rights "Guaranteed and Applied" to Dennis and Baby John*

The circuit court's first ruling is that the Parentage Act violates due process and equal protection rights "guaranteed and applied" to Dennis and Baby John. Because the court makes specific reference to Dennis and Baby John, we logically conclude that the circuit court intended by this ruling to find the Parentage Act unconstitutional "as applied" to the parties in the case before us. This being so, we need not review the court's ruling on its merits. Because the circuit court never held an evidentiary hearing and made no findings of fact, it could not have found the Act unconstitutional as applied to Dennis and Baby John.

A court is not capable of making an "as applied" determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. *Reno v. Flores*, 507 U.S. at 300-01, 123 L. Ed. 2d at 15-16, 113 S. Ct. at 1446 (when there are no findings or evidentiary record, the constitutional challenge must be facial). Without an evidentiary record, any finding that a statute is unconstitutional "as applied" is premature. See *In re R.C.*, 195 Ill. 2d 291, 299-300 (2001); see also *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 555-56 (1996) (McMorrow, dissenting) (reaching the merits of a constitutional "as applied" challenge without the presentment or circuit court consideration of any evidence creates constitutional due process concerns). Nor would it be appropriate for this court, *sua sponte*, to consider whether the statute has been constitutionally applied since we, as a reviewing court, are not arbiters of the facts. Accordingly, we reverse the circuit court's first ruling. We are limited, therefore, to a review of the Act's facial validity.

**B.** *Whether the Parentage Act Is Facially*
*Unconstitutional Because It Does Not Require a Best*
*Interests Hearing Prior to a Finding of Paternity*

At the outset, we note that a facial challenge to the constitutionality of a statute is the most difficult challenge to mount successfully. *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994). This is because a statute is facially invalid only if no set of circumstances exist under which the Act would be valid. *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987). The fact that the statute could be found unconstitutional under some set of circumstances does not establish the facial invalidity of the statute. See *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 504, 71 L. Ed. 2d 362, 375, 102 S. Ct. 1186, 1196 (1982) (" 'Although it is possible that specific future applications ... may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise' "), quoting *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 52, 16 L. Ed. 2d 336, 348, 86 S. Ct. 1254, 1265 (1966). With this standard in mind, we turn to the circuit court's second ruling, that "the statute is facially unconstitutional in that it fails to allow a court to determine best interests of children in considering petitions brought under 750 ILCS 45/7."

Interpreting the circuit court's order literally, the circuit court invalidated the Parentage Act because section 7 of the Act allows "petitions" to be brought without a prior best interests hearing. As noted earlier, however, section 7 governs petitions brought to *establish* paternity, as well as actions to *disestablish* paternity. In addition, section 7(a), which permits petitions to establish paternity, affords standing to a number of individuals and entities in addition to putative fathers and encompasses situations where the child's mother was not married and, therefore, there is no presumed father. Accordingly, sec-

tion 7 embraces a multitude of situations which were not under consideration by the circuit court at the time of its ruling. Thus, we think a more reasonable interpretation of the circuit court's order is one that limits the reach of the circuit court's finding of unconstitutionality to the narrow circumstances that were before it. Therefore, we interpret the circuit court order to mean that section 7(a) of the Act is facially invalid to the extent that it permits, without a prior best interests hearing, a paternity action brought by a man alleging himself to be the biological father of a child who was born during the marriage of the mother to another man. Even with this narrow interpretation of the circuit court's ruling, however, we are unable to affirm the court's finding that the Parentage Act is facially invalid.

The circuit court declared the Parentage Act facially unconstitutional because it does not provide for a best interests hearing before allowing a paternity action to proceed. However, neither the circuit court's order, nor its verbal rulings, provided any explanation why, even under the limited circumstances set forth above, the failure to hold a preliminary best interests hearing would, *in all cases*, render the statute unconstitutional. Indeed, the court never stated whether the statute's invalidity stems from a violation of federal or state constitutional principles and we are left to wonder what constitutional provision the court applied here to find the Act invalid.

Additionally, the court never identified the party whose rights or interests it found were being infringed by the lack of a best interests hearing. Generally, when a best interests hearing is required prior to some action, it is for the protection of the child. Here, however, the challenge to the constitutionality of the Act was raised by the presumed father. The court never explained why a presumed father, when attempting to assert his own rights under the Act, has standing to challenge the Act

on the grounds that it is against the child's best interests. This is an issue that has been considered in other courts. See *In re Marriage of Thier*, 67 Wash. App. 940, 945, 841 P.2d 794, 797 (1992) (the best interests of the child "standard cannot be invoked on behalf of someone other than the child' " (emphasis omitted)), quoting *McDaniels v. Carlson*, 108 Wash. 2d 299, 310, 738 P.2d 254, 261 (1987).

Finding no explanation for the circuit court's holding that a preliminary best interests hearing is constitutionally required, we turn to the arguments presented by the appellee, Dennis, who is the party who challenged the constitutionality of the statute in the court below. As noted earlier, the party challenging the constitutionality of a statute bears the burden of clearly establishing its unconstitutionality. *In re Curtis B.*, 203 Ill. 2d 53, 58 (2002).

In his brief before this court, Dennis argues that, by not providing for a preliminary best interests hearing, the statute is unconstitutional because it permits the "automatic invasion of an intact family by a stranger" and "allows an interloper to involuntarily invade the marital relationship and impugn its integrity." He claims the statutory scheme works a hardship on children "raised by a [presumed] father," whom "they considered their father." Similarly, in the court below, Dennis argued that the statute is unconstitutional because a 10-year-old child, living with the husband and wife, raised by the husband as his child, could be displaced by a biological father who is a stranger, but "comes in ten years later *** and says I want a cotton swab, I'm the dad." Dennis also posited that there could be a situation where the child of the biological father seeking to establish paternity was a product of rape.

The very wording of Dennis' arguments, however, demonstrates the failure of proof as to the statute's *facial*

validity. In advancing his arguments, Dennis makes numerous assumptions or suggests various hypothetical situations wherein the statute might be applied unconstitutionally. Without expressing any opinion on the constitutionality of the statute in the circumstances suggested by Dennis, we find that Dennis fails to carry his burden of clearly showing that, *in all instances*, the failure to hold a best interests hearing before allowing a paternity action to proceed would be unconstitutional. In particular, Dennis has not shown why it would be unconstitutional to allow a paternity action to proceed without a best interest hearing in a situation where the biological father has been living with the child or where the marriage between the child's mother and the presumed father has already disintegrated so that there is no "intact family." Thus, Dennis' arguments do not support the circuit court's holding that the statute is facially invalid.

In addition to the above arguments, Dennis urges this court to affirm the circuit court's ruling by discussing "Family Law Trends" and public policy considerations. He suggests that the inability of courts to consider the best interests of children before determining parentage is "lamentable" and that a court "should" have this ability. He cites the special concurring opinions in *J.S.A. v. M.H.*, 343 Ill. App. 3d 217 (2003), which emphasize the importance of allowing courts to consider children's best interests when making paternity determinations. He suggests that our Parentage Act overemphasizes the biological connection and is out of step with current realities. Dennis concludes: "Not only is the statutory scheme here *arguably unconstitutional*, sociologically and scientifically it is no longer appropriate as evidenced by trends in family law." (Emphasis added.)

The trends and policy considerations provided by Dennis are not authority which would support a finding

that the statutory scheme at issue here is facially unconstitutional. Further, Dennis argues the invalidity of the statute by stating only that it is "arguably" unconstitutional. Dennis' arguments show, at best, a disagreement with the wisdom of our current legislative scheme. As this court held in *Hayen v. County of Ogle*, 101 Ill. 2d 413, 420-21 (1984), where objections "pose what are essentially questions of policy [they] are more appropriately directed to the legislature than to this court." When assessing the constitutionality of a statute " 'we do not sit as a superlegislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare.' " *Hayen v. County of Ogle*, 101 Ill. 2d at 421, quoting *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423, 96 L. Ed. 469, 472, 72 S. Ct. 405, 407 (1952). See also *Smith v. Board of Education of Oswego Community High School District*, 405 Ill. 143, 147 (1950) ("The wisdom of *** legislation is a question for the General Assembly and not for this court. It is our function to determine whether the legislation is forbidden by the constitution").

The burden of clearly showing the facial invalidity of the Parentage Act has not been met. For this reason, we reverse the circuit court's judgment that the Parentage Act is facially unconstitutional because section 7(a) of the Act makes no provision for a best interests hearing before allowing a paternity action to proceed.

Having found that the statute is not unconstitutional, we reverse the dismissal of Javier's petition and remand for further proceedings.

CONCLUSION

For the forgoing reasons, the judgment of the circuit court is reversed and the cause is remanded to that court.

*Reversed and remanded.*